John A. Radovich v. Commissioner.
Radovich v. Commissioner
Docket No. 36969.
United States Tax Court
T.C. Memo 1954-220; 1954 Tax Ct. Memo LEXIS 26; 13 T.C.M. (CCH) 1121; T.C.M. (RIA) 54326; December 15, 1954, Filed *26 Petitioner was employed by Eversharp, Inc., during January and February, 1948, as the supervisor of salesmen in eleven western states. During the last ten months of that year petitioner acted as the Eversharp sales representative for the State of Michigan. Petitioner incurred a number of expenses in performing the above services for which he received no reimbursement. Held, petitioner was an employee throughout 1948, and in computing his adjusted gross income he was limited to the deductions allowed by section 22(n)(2) of the 1939 Code. The amount of the allowable deductions determined under Cohan v. Commissioner, (C.A. 2), 39 Fed (2d) 540. George H. Zeutzius, Esq., 510 South Spring Street, Los Angeles, Calif., for the petitioner. George E. Constable, Esq., for the respondent. BRUCE Memorandum Findings of Fact and Opinion BRUCE, Judge: Respondent determined a deficiency of $1,792.61 in petitioner's income tax for the year 1948. The question for decision is whether respondent correctly determined that petitioner was not entitled to deduct certain claimed expenses in computing his adjusted gross income. Findings of Fact Petitioner resides in Los Angeles, California. He filed his income tax return for the taxable year 1948 with the collector of internal revenue for the district of Michigan. In November 1944 petitioner was employed by Eversharp, Inc., (hereinafter sometimes referred to as the Company), as a sales representative selling Eversharp products solely on a commission basis. Starting late in 1947 and until March 1, 1948, petitioner was supervisor of salesmen for Eversharp, Inc., in eleven western states. *28 During this period he made his home and headquarters in San Francisco. For the remaining ten months of 1948 petitioner was the sales representative of Eversharp, Inc., for the State of Michigan. He made his home and headquarters during this later period in Detroit. Petitioner entered into a written "Employment Contract" with Eversharp, Inc., dated April 1, 1948, with regard to his acting as sales representative for the State of Michigan. From March 1, 1948, until the contract was signed, it was verbally understood that the terms of petitioner's employment were the same as those stated in the contract. Under the "Employment Contract" petitioner was required to devote his full time to the sale of the Company's writing instrument products in his territory, to make regular calls on all present customers, and to solicit others. He was required to submit to the Chicago office weekly in advance his proposed itinerary for approval and was required to send in daily performance reports. Petitioner could take customers' orders, but he had no authority to bind the Company or to make collections or adjustments. He could not leave his territory without permission. The agreement could be terminated *29 by either party on seven days' notice, and petitioner agreed not to engage in the same or similar business as that of the Company for six months if the contract was terminated by him. Petitioner's sole compensation was a commission on net shipments to customers in his territory. The Company could change the commission rate on new merchandise and on old merchandise where the price was reduced to meet competitive conditions. Petitioner was to receive a $600 advance each month which would be applied against his commissions. He was required to make up any deficiency in this account by the 15th of the following month. He received no travel allowance, but was to pay his own travel expenses. The Company was required to furnish certain sales materials for which petitioner was to make a deposit, but any merchandise, including samples, was to be purchased by petitioner. If petitioner did not give away samples equal to 10 per cent of his gross earnings, the Company could do it for him, and charge petitioner for the cost of the samples. The Company was to secure a fidelity bond covering the petitioner. Petitioner was to reside in his territory and his territory could be changed at any time. He *30 was to maintain an automobile and insurance thereon covering himself and the Company. During the period from March 1 to December 31, 1948, both petitioner and Eversharp, Inc., complied in nearly every respect with the terms of the above contract. As sales representative, petitioner was subject to a regional manager; but as petitioner had considerable experience, he did not require active supervision. During this period petitioner, in addition to his duties as sales representative, trained three Eversharp salesmen who were to work in Ohio. Eversharp, Inc., withheld Federal income tax and social security from petitioner's compensation. Eversharp, Inc., furnished petitioner with an airline credit card during January and February 1948. Petitioner paid all other expenses incurred by him during 1948 and was not reimbursed to any extent. Petitioner was away from his headquarters in San Francisco and Detroit at least 150 days during 1948. During the ten months while in Michigan, petitioner made his headquarters or office in his own home or rooms. He incurred substantial travel, telephone, freight, stenographic, mailing, promotion, and entertainment expenses. He also purchased a considerable *31 quantity of merchandise samples, consisting of pens and pencils, desk sets, etc., which he gave out as samples to clerks, wholesalers, and salesmen. Petitioner expended no less than $1,500 on travel and $1,350 for meals and hotel rooms while away from home on business during 1948. Petitioner reported in his 1948 income tax return gross income from sales in the amount of $10,889.48, claimed deductions therefrom of $8,227.87, and reported an adjusted gross income of $2,661.61. He took the standard deduction and reported a tax liability of $298. Respondent disallowed all of the deductions claimed "for lack of substantiation," but increased the standard deduction allowed to $1,000. Opinion During 1948 petitioner incurred a variety of expenses in connection with the performance by him of services for Eversharp, Inc. The question is whether, for the purpose of computing his adjusted gross income under section 22(n) of the 1939 Code [1] petitioner was an independent contractor and entitled to all the "deductions allowed by section 23 which are attributable to a trade or business" or was an employee and limited to the "deductions allowed by section 23 which consist of expenses of travel, *32 meals, and lodging while away from home." The term "employee" cannot be defined in general terms with substantial accuracy. Whether a taxpayer was acting as an employee or as an independent contractor is a question of fact to be determined by weighing all the circumstances present in each particular case. ; . In defining the term "employee" as used in section 22(n) this *33 Court, in , adopted the test set forth in , where we said: "* * * We think the purpose of the statute [Renegotiation Act] will be served if the term 'employee' is given its ordinary and usual interpretation as comprising one who meets the test of the generally established concept of legal relationship of employer and employee. Such a relationship exists where the employer retains the right to direct the manner in which the business is to be done, as well as the result to be accomplished. . An 'independent contractor' is most frequently defined as one who contracts to do certain work according to his own methods and without being subject to the control of his employer, except as to the product or result of his work. 27 Am. Jur., Independent Contractor, § 2, p. 481." Undoubtedly, during the first two months of 1948 when petitioner was the supervisor of salesmen for Eversharp, Inc., in eleven western states, he was acting as an employee. There is certainly nothing in the record to indicate that he was not an employee. *34 Ascertaining the status of petitioner during the last ten months of 1948, when he was the Eversharp sales representative for the State of Michigan, presents a more difficult question. Petitioner relies heavily upon the fact that he received little or no active supervision, had no set hours, and was allowed considerable leeway in the conduct of his sales endeavors. The primary test, however, is not whether the employer actually controls the taxpayer's physical conduct in the performance of the services, but whether the taxpayer is subject to the employer's control or right to control. Cf. 1 Restatement, Agency (1933) Sec. 220. After weighing all the circumstances present in the instant case, it is our opinion that petitioner was rendering his services as an employee. In most respects he was subject to the control or right of control of Eversharp, Inc., in the performance of his services. He was required to devote his full time to the company's business, to submit his proposed itinerary for approval, to send in daily performance reports and to make regular calls on present customers. He could only take orders and could not make collections or adjustments. He could not *35 engage in the same line of work for six months if he terminated his contract. He was confined in his sales endeavors to the State of Michigan and his territory could be changed at any time. He had been employed by the Company for several years prior to 1948 in a number of capacities. He was technically subject to a regional manager in the performance of his services. He trained salesmen for Eversharp, Inc., for which he received no additional compensation. Eversharp, Inc., was to secure a fidelity bond covering petitioner, required petitioner to obtain liability insurance covering the Company, made deductions from petitioner's compensation for withholding tax and social security, and worded the "Employment Contract" in a manner suggesting an employer-employee relationship. These latter factors indicate that the Company regarded petitioner as an employee. More in keeping with the status of independent contractor were the payment by petitioner of all his own expenses, the manner in which he was compensated, and the discretion which he was allowed in the performance of his services. But since the lack of supervision over petitioner was due to his experience, and not to a failure by *36 the Company to retain the right to control his performance, these circumstances do not outweigh the factors pointing to petitioner's status as an employee. The situation here is unlike that in , in which it was held that the taxpayer was an independent contractor. There the taxpayer in her sales endeavors was not subject to any supervision or control or right of control. As petitioner was acting as an employee throughout 1948, he is allowed, under section 22(n), in computing his adjusted gross income only those deductions which consist of expenses incurred for "travel, meals, and lodging while away from home" on business during 1948. The amount of petitioner's expenses for those items cannot be accurately determined for lack of records, and petitioner's claim is based principally upon his own estimates. Another difficulty is presented by petitioner's failure to segregate the amount of his automobile expenses while "away from home" on business from his other automobile expenses. However, applying the rule in , we have allowed petitioner $1,350 for his expenses for meals and lodging *37 and $1,500 for his travel expenses while away from home on business during 1948. In computing his tax liability for the year 1948, petitioner took the standard deduction under section 23(aa) of the 1939 Code. The standard deduction is in lieu of all other deductions from adjusted gross income, and petitioner's election to take the standard deduction is irrevocable. Petitioner has evidently abandoned any contention to the contrary. Therefore, the telephone, freight, stenographic, mailing, entertainment, promotional, and other expenses incurred by petitioner which are not allowable deductions from gross income under section 22(n), cannot now be deducted from adjusted gross income in lieu of the standard deduction. Respondent concedes that petitioner sustained a $100 nonbusiness bad debt loss during 1948. Decision will be entered under Rule 50. Footnotes
1. SEC. 22. GROSS INCOME. * * *
(n) Definition of "Adjusted Gross Income". As used in this chapter the term "adjusted gross income" means the gross income minus - (1) Trade and business deductions. - The deductions allowed by section 23 which are attributable to a trade or business carried on by the taxpayer, if such trade or business does not consist of the performance of services by the taxpayer as an employee; (2) Expenses of travel and lodging in connection with employment. - The deductions allowed by section 23 which consist of expenses of travel, meals, and lodging while away from home, paid or incurred by the taxpayer in connection with the performance by him of services as an employee; * * *↩